UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

FAIRMONT SPECIALTY INSURANCE
COMPANY                                                                    PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 2:05cv396-KS-JMR

SMITH POULTRY & FARM SUPPLY, INC.;
And WILLIAM WHITE, JR.                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment **[#20]** filed on

behalf of the plaintiff, Fairmont Specialty Insurance Company ("Fairmont").  The court,

having reviewed the motion, the responses, the briefs of counsel, the authorities cited,

the pleadings and exhibits on file, and being otherwise fully advised in the premises

finds that the motion is well taken and should be granted.  The court specifically finds

as follows:

## FACTUAL BACKGROUND

In 1995, Smith Poultry & Farm Supply, Inc. ("Smith") and William White, Jr.

("White") entered into a written contract for the construction of five commercial chicken

houses to be built by Smith (a general contractor) for White (owner).  Construction

lasted approximately one year.  While construction was on-going and continuing after

completion of construction, White complained to Smith of defective workmanship and

defective materials with specific complaints being strapping, electrical problems and

leaks in the roofs.  Smith initially made or attempted repairs to the new construction but ceased repairs approximately one year after completion, which he considered to be the duration of his responsibility for the alleged construction problems.

On October 27, 1999, White sued Smith in the Circuit Court of Smith County, Mississippi alleging defective materials and workmanship in the construction of the five chicken houses.  White also alleged failure to repair, breach of warranty and emotional distress.  On August 15, 2002, White filed an amended complaint and made an additional allegation of negligent construction on the part of Smith.

On January 24, 2005, White filed a Second Amended Complaint and made additional allegations of breach of warranty, negligence, gross negligence, breach of contract, bad faith, intentional, willful, malicious conduct, and mental and physical anguish.  Smith filed an answer to all three complaints and made a general denial of allegations contained therein.

Smith had acquired a commercial general liability (CGL) policy from Ranger Insurance Company (now Fairmont Speciality Insurance Company) in August of 1999 which had a term beginning August 26, 1999, and concluding August 26, 2000.  After White filed his Second Amended Complaint, Smith made demand on Fairmont to defend it in the state court action.  By letter of June 30, 2005, Fairmont agreed to assume the defense of Smith subject to a reservation of rights.  On July 1, 2005, Fairmont filed this declaratory action in this Court.  Fairmont argues that as a matter of law it neither owes a defense nor indemnification to Smith pursuant to the terms of the policy.

Fairmont argues that there are at least four reasons why it does not owe either a

2

duty to defend or indemnity to Smith and that any one of these is dispositive. Those reasons are: 1) there has been "no occurrence" as defined by the policy and as defined by current case law as found in both the Southern District Courts of Mississippi and the Fifth Circuit Court of Appeals; 2) the policy specifically excludes intentional acts and conduct; 3) there is no coverage for negligent or grossly negligent conduct which causes bodily injury or property damage as defined in this policy under these circumstances; and 4) the actions complained of against the insured occurred three years before the policy went into effect and thus are specifically excluded by the policy.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence

is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.

4

*Topalia*n, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## INSURANCE CONTRACT INTERPRETATION

Mississippi rules of construction of insurance policies were succinctly set forth in

the Fifth Circuit case of *Centennial Insurance Company v. Ryder Truck Rental Inc.*, 149

F.3d 378 (5th Cir. 1998).  Those rules are as follows:

> First, where an insurance policy is plain and unambiguous the court must
> construe that instrument like other contracts, exactly as written. (Citation
> omitted).  Second, it reads the policy as a whole, thereby giving effect to
> all provisions.  (Citation omitted).  Third, it must read an insurance policy
> more strongly against the party drafting the policy and most favorably to
> the policyholder.  (Citation omitted).  Fourth, where it deems the terms of
> an insurance policy ambiguous or doubtful, it must interpret them most
> favorably to the insured and against the insurer.  (Citation omitted).  Fifth,
> when an insurance policy is subject to equally reasonable interpretations,
> a court must adopt the one giving the greater indemnity to the insured.
> (Citation omitted). Sixth, where it discerns no practical difficulty in making
> the language of an insurance policy free from doubt, it must read any
> doubtful provision against the insurer.  (Citation omitted).  Seventh, it must
> interpret terms of insurance policies, particularly exclusion clauses,
> favorably to the insured wherever reasonably possible.  (Citation omitted).
> Finally, although ambiguities of an insurance policy are construed against
> the insurer, a court must refrain from altering or changing a policy where
> terms are unambiguous, despite resulting hardship on the insured.
> (Citation omitted).

149 F.3d at 382-383.

## ANALYSIS

The court finds that the first issue addressed by the plaintiff is dispositive of the

case, that is, there was no "occurrence" which triggered coverage under the policy and

hence no duty to defend nor indemnify arose.  The Fairmont policy contains the

following language concerning an occurrence:

> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> > **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory; and
> >
> > **(2)** The "bodily injury" or "property damage" occurs during the policy period.

Occurrence is defined in the policy as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions." Accident is not defined in the policy, as often it is not in CGL policies. The Mississippi Supreme Court, though, has explicitly stated that when determining whether there has been an "occurrence" defined as an "accident," "the only relevant consideration is whether . . . the chain of events leading to the injuries complained of  was set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." *Allstate Ins. Co. v. Moulton*, 464 So.2d 507, 509. Further, "the term accident refers to [the insured's] action and not whatever unintended damages flowed from the act." *Id.* at 510.

Applying the foregoing principles of well settled law in Mississippi to the facts of this case, it is abundantly clear that a claim for defective construction, whether negligent or intentional, is not covered under the "occurrence" definition contained in this, and most any other, commercial general liability policy. See *ACS Const. Co., Inc. of Mississippi v. CGU*, 332 F.3d 885 (5th Cir. 2003) and *USF&G v. Omnibank*, 812 So.2d 196 (Miss. 2002). Smith's actions in constructing the chicken houses was certainly intentional. Consequences related to that construction and which flow from that

conduct are simply not an "occurrence" under this CGL policy which would triger both a duty to defend and indemnify.  Commercial general liability policies are simply not performance bonds and the defendants' attempts to urge the court to find otherwise are without merit.

IT IS THEREFORE ORDERED AND ADJUDGED that the plaintiff's Motion for Summary Judgment **[#20]** is Granted and the court declares that the plaintiff owes no duty to defend nor indemnify the defendants under the commercial general liability policy at issue in this case.

IT IS FURTHER ORDERED AND ADJUDGED that since the court has ruled on the request for declaratory judgment and there being nothing further to do in this matter, the case is dismissed with prejudice.  A separate judgment will be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 24th day of July, 2006.


s/ *Keith Starrett*
UNITED STATES DISTRICT JUDGE